## JAMES W. SCHWABE, et al., Appellants, v. W. B. ESTES, Respondent.

### Kansas City Court of Appeals, January 5, 1920.

1. **REAL ESTATE BROKERS:** Right to Commission. Before a real estate broker may recover a commission he must prove that he was the efficient cause of the sale.

2. ———: ———: Instructions. An instruction to the effect that the jury could not find for the plaintiff in an action to recover a broker's commission, unless they found·"that plaintiff procured or found a purchaser in the person of Marshall Gordon, and that said Marshall Gordon was influenced to purchase, and did purchase, said farm as the result of the solicitation or efforts of said plaintiff" is not erroneous in requiring a finding that the purchaser was influenced by the plaintiff, the word "influence" being synonymous with "induce" or "procure" either of which are approved words in such an instruction and which words were used in plaintiff's instructions.

3. ———: ———: ———: Conceded Fact. Where the plaintiff submits an instruction requiring the jury to find a conceded fact he cannot complain of an instruction given in the defendant's behalf requiring the jury to find that same conceded fact.

4. ———: ———: Weight of the Evidence. The appellate court may set aside a verdict only where there is no substantial evidence whatever to sustain it.

Appeal from Boone County Circuit Court.—*Hon. David H. Harris,* Judge.

AFFIRMED.

*Ralph T. Finley* for appellants.

*McBaine, Clark & Rollins* for respondent.

BLAND, J.—This is a suit for a real estate broker's commission. There was a verdict and judgment for the defendant. Plaintiffs have appealed, complaining of instructions given on behalf of defendant.

There was evidence on the part of plaintiffs that on or about February 4, 1918, plaintiffs and one Frazier, being auctioneers, went to see the defendant for the purpose of buying his personal property or being employed to sell it as auctioneers; that at that time defendant listed his farm of 397 acres with plaintiffs to be sold by them for $100 per acre and agreed to pay plaintiffs a commission of two and one-half percent. Shortly afterwards plaintiff Clay Schwabe saw one Gordon as the former was walking down 9th Street in Columbia, Missouri, and talked to the latter about buying the farm. Gordon said "he would consider it," that there was a party he wanted to communicate with before he would look at it. Three or four days later said plaintiff inquired of Gordon if he had heard from the man and Gordon said that he had not. Six or seven days thereafter said plaintiff saw Gordon for the third time and the latter said that the other man had not been able to sell his farm in Pettis County and that he (Gordon) "did not know just what about the deal at that time." Said plaintiff offered to take Gordon to see the farm but Gordon would not go, saying that he would see said plaintiff later. Sometime in March, 1918, Gordon purchased the land directly from defendant at the price and sum of $100 per acre, paying $1,000 in cash and agreeing to pay the balance on or before March 1, forfeit said sum of $1,000.

Sometime before March, 1919, Gordon sold the land to one Lynes and it was conveyed by the defendant at the request of Gordon directly to Lynes. Plaintiffs upon hearing of these transactions demanded a commission but the defendant refused to pay the same. Defendant denied making any contract with plaintiffs to sell the land, testifying that the conversation wherein 1919. If Gordon did not take the farm, he agreed to plaintiffs claimed that the land was listed for sale with them did not consist of the matters claimed by plaintiffs but that defendant did nothing more than attempt to sell the land to plaintiffs who came to him to see about

buying it for themselves. Gordon, on behalf of defendant, testified that plaintiff Clay Schwabe talked to him about the land but that he was not particularly interested in it at the time and that, afterwards, seeing an advertisement in a newspaper, inserted by defendant, he entered into negotiations with defendant for the land, which resulted in his buying the same.

Plaintiffs complain of defendant's instructions Nos. 2, 3 and 5. Defendant's instruction No. 2 told the jury that unless they found that Gordon purchased defendant's farm and "that the purchase of said farm by the said Gordon was the result of the efforts of plaintiffs in that behalf, and that said Gordon was influenced to purchase said farm by plaintiffs, then your verdict must be for the defendant." Defendant's instruction No. 3 told the jury that they could not find a verdict for the plaintiffs unless they found "that plaintiff procured or found a purchaser in the person of Marshall Gordon, and that said Marshall Gordon was influenced to purchase, and did purchase, said farm as the result of the solicitation or efforts of plaintiffs." Defendant's instruction No. 5 told the jury that they must find that defendant contracted with plaintiffs to sell the land, and that if they found there was no such contract they should find for the defendant, even though Gordon "was first informed of the fact that defendant's farm was for sale by plaintiffs, and began negotiations for the purchase of said farm as the result of the solicitations of plaintiffs, and was influenced to purchase said farm by said plaintiffs." The first objection to these insttructions is that they not only required, "That the purchase of the farm by Gordon was the result of the efforts of plaintiffs, but adds, '*and that said Gordon was influenced to purchase said farm by plaintiffs.*' This certainly conveyed the idea to the jury that plaintiffs must not only procure a purchaser, but they must personally exert an *influence* upon the purchaser during the negotiations."

What a broker is required to do to earn a commission is well settled. In the case of Crane v. Miles, 154 Mo. App. 338, 348, it is said:

"The law is well-established in this State that to entitle a real estate broker to his commission he must be the efficient cause in finding a purchaser; that it is not sufficient that the act of the broker was one of a chain of causes bringing about the sale, but in order for the broker to recover for his services, his act or acts must have been the procuring or inducing cause, and the burden is upon him to show, not only that he opened negotiations with the purchaser, but that the sale was actually effected through his means and not by the intervention of new parties or upon different terms."

No precise form or language is necessary to be used in instructions in these cases. It is only necessary that the instructions cover the idea that the agent must have been the procuring and inducing cause of the sale. Any words conveying clearly this principle may be used in an instruction. [Ross v. Major, 178 Mo. App. 431, 442.] It is not sufficient that the agent interest the customer in the property, although if he does interest him and as the result of what he does the customer is induced to purchase the property, and the agent's efforts are the procuring cause of the sale, he is entitled to a commission. [Lane v. Cunningham, 171 Mo. App. 17, 21.] Therefore, in this case it was necessary for the jury to believe that plaintiffs did something more than merely talk to Gordon in reference to buying the land. It must have been found that the conversations had were the efficient, inducing or procuring cause of the sale.

Plaintiffs' instruction No. 1, which covered the entire case and directed a verdict for the plaintiffs, told the jury that if the farm was sold as the result of plaintiffs "efforts" their verdict should be for the plaintiffs. Plaintiffs' instruction No. 2 told the jury that plaintiffs' "efforts" need not be the sole contributing cause of the purchase but it was sufficient 'as to who procured said sale, that the plaintiffs were the procuring and

inducing cause of such sale. And by the term 'procuring and inducing cause' is meant that cause originating a series of events which in natural sequence results in the accomplishment of the sale." From plaintiffs' instructions it will be seen that it was plaintiffs' theory that no precise language was necessary to be used in the instruction as they used the words "efforts" as well as "procuring" and inducing" cause.

We do not think that defendant's instructions are subject to the complaint that they required plaintiffs to do more than to "induce" or "procure" a purchaser. It is apparent that the word "influenced" is not a stronger word than the word "induce, or "procure." [22 Cyc. 714.] Webster's International Dictionary uses the verbs "to induce" and "to influence" as synonymous. It would be just as logical to say that the use of the words "procuring and inducing" (approved words and words used in plaintiffs' instruction) would be error, for the reason that by adding the word "inducing" the jury would get the idea that something more was necessary than that the broker's endeavors be the "procuring" cause. The words are approved because they are practically synonymous. The addition of the word "*influence*" would require no greater finding on the part of the jury for the reason that, if anything, the word "influence" is weaker than the words "procure" or "induce." If a broker does not influence the sale, he certainly could not be the procuring and inducing cause of it. The use in an instruction of the words 'was so procured, and induced to enter into negotiations and make such purchase, by and through the efforts and *influence* of plaintiff" are approved in the case of Monson v. Carlstrom, 141 Iowa, 183. We find no merit in plaintiffs' point. Neither was there any conflict in the instructions.

Plaintiffs claim that defendant's instructions required the jury to find a conceded fact, that is, that the land was purchased by Gordon, and they were erroneous for this reason. We find that plaintiffs in

their instruction No. 4 submitted to the jury this same issue, and for that reason, of itself, they cannot now complain.

It is insisted that the verdict was against the weight of the evidence. A contention that the verdict is against the weight of the evidence is one for the attention of the trial court and not for this court. It is only when there is no substantial evidence whatever to sustain a verdict that this court may interfere. While it is true that there were three witnesses who testified as to plaintiffs' employment as against the word of defendant that he did not employ them, the number of witnesses is not decisive of the question as to the weight of the evidence, to say nothing of the point as to whether the verdict is without substantial evidence to support it. There was not only substantial evidence that plaintiffs were not employed but there was evidence for the jury as to whether the plaintiffs were the inducing and procuring cause of the sale.

The judgment is affirmed. All concur.