R. S. RAWLINGS, Respondent, v.   J. E. WADDILL, Appellant.

Kansas City Court of Appeals, February 7, 1921.

1. **BROKERS: Not Entitled to Commission Where Not Procuring Cause.** Where defendant was employed to procure a loan, and his efforts had something to do with final procuring of said loan, which was obtained by another agent, but did not bring about the loan, defendant was not procuring cause.

2. **APPEAL AND ERROR:** Where Evidence is Evenly Balanced the Conclusion of the Chancellor Will be Deferred to on Appeal. Where the evidence is evenly balanced the appellate court will defer to the conclusion of the chancellor.

Appeal from the Circuit Court of Jackson County.—*Hon. C. A. Burney,* Judge.

AFFIRMED.

*Cook & Gossett* for respondent.

*W. F. Zumbrunn, E. E. Bowers* and *Floyd S. Strattan* for appellant.

BLAND, J.—This is a suit in equity for an accounting of money held by defendant as trustee. The funds in dispute were profits of a land selling enterprise engaged in by plaintiff and defendant. Among other things, the answer pleaded by way of counterclaim that plaintiff owed defendant the sum of $5,000 as commission for the procuring of a loan of $35,000 by defendant for plaintiff, and that plaintiff owed defendant the sum of $778 paid by defendant as interest on $18,000 borrowed by defendant for the joint business. There was a judgment for plaintiff and against the defendant on all of the issues and defendant has appealed. The two items above mentioned are the only matters now in controversy.

The following are the facts, most of them are shown by the undisputed evidence but some only by the preponderance of the evidence: Plaintiff, whose headquarters was in Kansas City, Mo., had a contract with one Littlefield for the sale of lands in Texas belonging to the latter. It was plaintiff's scheme to trade Littlefield's property for northern lands but Littlefield had to have a certain sum in cash per acre for his land. In order to raise this money it was necessary to immediately sell the lands taken in exchange or to have someone who could furnish the money in cash. Owing to the fact that the lands could not

always be immediately sold and that plaintiff himself did not have the money, it was necessary for him to have someone to furnish sufficient cash to pay Littlefield and to advance the necessary money to pay the operating expenses of the business. This money was furnished by defendant under an agreement that he and plaintiff or plaintiff's company were to share the profits of the venture. Defendant was to have custody of the money and the property.

In the spring of 1915 defendant was of the opinion that plaintiff and his associates were making too many trades and not enough cash sales so he announced to plaintiff that he would not further finance the business. On June 22, 1915, plaintiff and defendant dissolved. It became urgent that plaintiff have someone to finance him in his operations so, about the first of September, 1915, he entered into an arrangement with defendant, after some negotiations as to the amount to be paid for defendant's services, that if defendant procured a person who would finance plaintiff to the extent of $35,000, he would pay defendant a commission of $5,000. Defendant thereupon interviewed one Ray Allee who officed near defendant in the same building in Kansas City. Defendant was in the retail lumber business and Ray Allee in the wholesale lumber business. They had known each other for some time and defendant had previously talked to him several times about financing plaintiff's business. Defendant attempted to interest Ray Allee in the business and recommended that the latter go into it, telling him that "it was a good safe proposition." Defendant thereupon took Ray Allee to plaintiff's office in Kansas City and introduced Ray Allee to plaintiff and Ray Allee talked to plaintiff in reference to the matter twice in person and twice over the telephone, and on the second, third or fourth day after the first meeting indicated to plaintiff that he would enter into the business. However, a few hours later on the same day, he wrote a note to plaintiff saying that he had decided not to go into it. Ray Allee testified that he then abandon-

ed the idea of going into the proposition on his personal account.

Defendant told Ray Allee that he was not financially interested in the proposition but was attempting to help out plaintiff and that he would receive no commission in the matter. When plaintiff was notified by Ray Allee that he would not go into the proposition, plaintiff apprised defendant of this fact and requested defendant to attempt to get Ray Allee to reconsider, which defendant did, seeing Ray Allee practically ever day for the following sixty days. When defendant approached Ray Allee in regard to going into the proposition the latter told defendant that he himself had some money available and that he had "some friends, that my father and that I had friends who would furnish me almost any reasonable amount of money for almost any enterprise that I wanted to engage in."

Defendant testified that after plaintiff notified him that Ray Allee would not go into the proposition that he called on Ray Allee and the latter confidentially told defendant his plans and purposes and said, "You know, Mr. Waddill, that I have talked to you all the time that me and my father and some of his friends down there could finance practically anything that we wanted to take hold   *   *   *   I want to work this thing a little bit different."

On October 25, 1915, plaintiff saw Ray Allee and told him that if he would get someone to furnish plaintiff $35,000, he would pay him a commission of $2,000. At that time Ray Allee suggested that his father might be interested, and thereupon he called his father, who lived at Eldon, Missouri, over the telephone and made an engagement for plaintiff to call upon his father at Eldon, which plaintiff did the next day. Plaintiff and Ray Allee started to Canada to look over the former's lands there on October 27th. They returned to Kansas City November 3d and Ray Allee reported the matter favorably to his father, resulting in an arrangement wherein the father, Dr. Allee, furnished plaintiff at

various times sums totalling somewhat in excess of $39,000. Ray Allee became treasurer of plaintiff's company for the purpose of looking after his father's interest, and after several months operation wherein the parties earned a handsome profit, the contract between the Allees and plaintiff was settled up and in this contract Ray Allee's commission of $2,000 was taken account of. A portion of the $39,000 that was advanced toward the enterprise was money of Ray Allee's but as to how much there is no evidence. Ray Allee did not tell plaintiff that he had any interest in the enterprise. Immediately after the execution of the contract wherein Dr. Allee agreed to furnish money to plaintiff, plaintiff told Ray Allee that defendant had been demanding a commission from him and said to Ray Allee, "If Waddill asks you how much money had been advanced, don't tell him."

Ray Allee testified to the effect that at the time plaintiff employed him to interest his father or someone in the business that he had long since abandoned the idea of going into it on his personal account and had acquainted plaintiff with that fact. Defendant testified that he suggested to Ray Allee that he get his father interested in the proposition. However, it would appear from the testimony of Ray Allee, who was placed upon the stand by the defendant and who seemed to be a fair witness, that he did not remember of defendant suggesting to him that he see his father in reference to the matter. He testified that he did not approach his father in reference to the proposition until plaintiff had employed him for that purpose, nor did he mention to defendant that he was sending plaintiff to see his father until after the arrangement therefor had been made.

It is insisted by the defendant that the court erred in not rendering judgment in his favor for the commission $5,000. In this connection, defendant points out that Ray Allee was introduced to plaintiff by defendant; that defendant at plaintiff's suggestion continued to work on Ray Allee to get the latter to reconsider the

matter; that plaintiff never at any time told defendant to desist in his efforts; that within sixty days defendant's efforts resulted in Dr. Allee, through Ray Allee, defendant's customer, becoming interested in the proposition and consummating a contract wherein the amount of money that plaintiff employed defendant to secure for him was advanced by Dr. Allee. Defendant cites Lincoln v. McClatchie, 36 Conn. 136. In that case the agent advertised the property. A saw the advertisement, conferred with the agent and told his friend B, in whose behalf he felt an interest, and B bought the property directly of the owner, knowing that it had been presented to A by the agent. It was held that the agent was the procuring cause of the sale.

However, there are facts in this case that make it materially different from the one just cited. There appears to have been two agents employed to negotiate the loan in this case, one, the defendant, the other, Ray Allee. The question is, was the defendant the procuring cause of the loan? There is no question but that the defendant set on foot the original negotiations for the loan but the evidence shows that he failed to make the loan; that Ray Allee, defendant's customer, investigated the matter and refused finally and absolutely to go into it and that he was not thereafter persuaded or induced by the defendant to reconsider but that another person, Dr. Allee, was induced to go into the proposition by Ray Allee only after the latter had been employed by plaintiff to secure the loan. There is no doubt but that the efforts of the defendant made some impression and had something to do with the final procuring of the loan but we do not think that they brought about the loan, therefore, in legal contemplation, were not the procuring cause of the loan. [Baumgartl v. Hoyne, 54 Ill. App. 496; Gamble v. Grether, 108 Mo. App. 340, 347.]

The following language used in Crain v. Miles, 154 Mo. App. 338, 349, was approved in Schwabe v. Estes, 202 Mo. App. 372, 375, and is peculiarly applicable to the facts in this case:

"The law is well established in this State that to entitle a real estate broker to his commission he must be the efficient cause in finding a purchaser; that it is not sufficient that the act of the broker was one of a chain of causes bringing about the sale, but in order for the broker to recover for his services, his act or acts must have been the procuring or inducing cause, and the burden is upon him to show, not only that he opened negotiations with the purchaser, but that the sale was actually effected through his means and not by the intervention of new parties or upon different terms."

It is stated in Gleason v. Nelson, 162 Mass. 245, 250: "If the broker merely talked about the property with different persons, and one of them of his own accord, and not acting in behalf of the broker, mentioned to another that the property was for sale, and such last mentioned person thereupon looked into the matter and finally became the purchaser," the broker was not the procuring cause of the sale.

Defendant brought out by direct testimony of his witness, Ray Allee, that a part of the $39,000 that was advanced by Dr. Allee was the money of Ray Allee but plaintiff did not see fit to elicit any information as to the amount of such money that was advanced by Ray Allee, whether that amount was a substantial sum or a small sum, or how it was advanced or the nature of the advancement is not shown. However, in defendant's refused finding No. 4 he sought to have the court find among other things that the *father advanced* to plaintiff "the money," "thirty-nine thousand, three hundred and some odd dollars." So we do not see how the matter can affect the point now under consideration. As to the statement of Ray Allee to defendant, as testified to by the defendant, that Ray Allee's father and his friends "could finance practically anything that we wanted to take hold of," this is not in accordance with Ray Allee's testimony to the effect that his father and his friends would advance the money for his own (Ray Allee's)

206 M. A.—36

enterprise. Ray Allee's testimony does not support the contention that his father would enter into any enterprise on his father's own account. We take the statement of Ray Allee, a disinterested witness placed upon the stand by defendant, in preference to defendant's evidence as to this matter.

As to defendant's testimony given at the same time that Ray Allee said to him, "I want to work this thing a little bit different," no matter of this kind is covered in Ray Allee's testimony; he was not asked in regard to it. As to what Ray Allee meant in making such a statement is not clear. There is nothing in the evidence to show what was meant unless it is taken in connection with defendant's evidence to the effect that Ray Allee told him that his father on his own account might advance the money for the proposition, which, as we have said, is not in accordance with Ray Allee's testimony. Of course, an inference might be drawn from defendant's testimony that Ray Allee told him that he was contemplating getting his father interested in the matter; that this was confidential information and "that he wanted to work this thing a little bit different," and that Ray Allee meant to infer that he also was going to attempt to get a commission out of plaintiff for interesting his father in the venture. Evidently this was the inference, even though it may seem far-fetched, that defendant attempted to make in his testimony, but no such inference may be drawn unless we accept defendant's entire statement in reference to the matter, which, as we have already stated, we do not.

The facts in reference to the claim of $778.00 for interest paid by the defendant on money that he borrowed for the joint enterprise of himself and plaintiff are as follows: Plaintiff testified that defendant was to furnish $18,000 and it was agreed that he was to receive "one per cent on each one thousand dollars, one per cent of the profits to one thousand dollars" advanced; that it was not agreed that any interest should be paid on said $18,000. A contract signed by plaintiff, defend-

ant and some others, recites that "said Waddill in consideration of furnishing . . . $18,000 for so financing such transaction should have and receive 18 per was procured from two different parties and it was the understanding that the one per cent of the profits was to go to these persons for advancing the money, and that he was entitled to interest that he paid on such money. He further testified that the attorney, who drew the contract last mentioned suggested that defendant's name be inserted as the one furnishing the $18,000 as a matter of convenience. The attorney testified that he did not remember any such statement alleged to have been made by him. The evidence is so evenly balanced on this item that we defer to the conclusion of the chancellor who tried the case in reference to the matter. [Walker v. Dobbins & Central Trust Co., 152 Mo. App. 270, 274; Vessar v. Neff, 124 S. W. 185.]

The judgment is affirmed. All concur.