# S. ALEX SCHEURER, et al., Respondents, v. ROGER EICHELBERGER, Appellant.

### Kansas City Court of Appeals, February 7, 1921.

1. **BROKERS: Whether Plaintiffs' Efforts Were the Procuring and Inducing Cause of Sale, Held, a Question for the Jury.** In an action to recover a commission for sale of defendant's farm the question of whether plaintiff's efforts were the procuring and inducing cause of sale was properly submitted to the jury.

2. **———: Disclosure by Brokers to Buyer that Seller Would Take Less Than Price Fixed Cannot Deprive Brokers of Commission.** Where plaintiffs' had been promised a commission for making sale of land, and their efforts were the procuring cause of sale, their disclosure to buyer after his refusal to pay fixed price that defendant would take less therefor could not conclusively defeat their cause of action on the theory that plaintiffs' were disloyal to their principal.

3. **———: Instruction, on Issue of Procuring Cause, That Acts of Brokers did not Have to be Sole Contributing Cause is Misleading.** In an action to recover commission for sale of land, an instruction which told the jury that plaintiffs' acts did not have to be the sole contributing cause, but that if through their efforts the sale resulted, that was sufficient on the issue of procuring cause, was misleading and liable to be misunderstood by laymen, who might think the sale was "through their efforts" as one of a chain of causes and yet be sufficient.

Appeal from Circuit Court of Boone County.—*Hon. David H. Harris,* Judge.

REVERSED AND REMANDED.

*N. T. Gentry* for appellant.

*William H. Sapp* for respondents.

TRIMBLE, P. J.—Plaintiffs brought this suit to recover a commission for the sale of defendant's farm.

The jury returned a verdict for $281 in favor, upon which judgment was rendered and defendant has appealed.

The amended petition, on which the case was tried, alleged that defendant on January 24, 1920, requested plaintiffs to sell or procure a purchaser for his farm, and agreed to pay a commission on the sale price thereof equal in amount to the usual and customary commission paid to real estate agents in Columbia, Missouri, for like services; that the usual and customary commission at that time was two and one-half per cent of the sale price; that defendant agreed to sell said land at about $120 per acre but stated that if he could not get that price, he would sell for a slightly lower price; and that plaintiffs procured a purchaser who, through plaintiffs' efforts, bought said land at about $111 per acre or a total of $14,050. The answer was a general denial.

Defendant's first point, that there was such a variance between the petition and evidence as to amount to a total failure of proof, overlooks the fact that the case was tried upon the amended and not the original petition; and hence this point, as well as the point that plaintiffs' instruction was erroneous because it submitted a cause of action upon a basis not within the pleadings, is not well taken. Indeed, at the oral argument, defendant's counsel very frankly stated that, because of the overlooked amended petition, his first point was abandoned. Nothing was said about the other point, but necessarily the complaint against the instruction, based on the same ground, falls with it.

It is contended that the demurrer to the evidence should have been sustained. This, we take it, is based upon two claims, first, that the evidence does not disclose that plaintiffs' efforts procured a purchaser or brought about the sale; second, that plaintiffs were not loyal to their principal, but their efforts, such as they exerted, were against rather than in favor of defendant's interests.

The facts bearing upon these claims are as follows:

The plaintiffs are not regular real estate brokers, but farmers living in the neighborhood of the "Hamilton place," the sale of which brought about this controversy. This Hamilton farm was owned by one, Evans, who contracted to sell it to one, Duncan, and he agreed to sell it to defendant, who, after thus buying it, desired to sell it.

Defendant met plaintiffs on the streets of Columbia on Saturday, the 24th of January, 1920, and defendant told them he had bought the place and wanted to sell it, and asked, "Could you find me a buyer?" One of plaintiffs expressed a possibility of doing so and asked, "Is there anything in it." To which defendant replied, "There's a commission in it," and said he would "rather pay you fellows" than the real estate agents. Plaintiffs thereupon told him that Mr. Tekotte had a small farm he wanted to sell and if he could do so, he would likely be a buyer. Defendant thereupon told plaintiffs to see him right away. He told them he wanted $120 and acre but would take less; and, according to plaintiffs' evidence, he did not say anything about not paying any commission if he got less, Defendant says he told them he would pay a commission if they got him a purchaser at $120 per acre.

On Monday, January 26th, Frost, one of the plaintiffs, went to Mr. Tekotte's home and told him defendant owned the Hamilton farm and would sell it. In the course of the conversation that followed, Tekotte said if he could sell his farm he would give $110 an acre for defendant's farm. As to defendant's price of $120 an acre, which Frost had stated, Tekotte said he wouldn't give it, but would give $110 an acre. Frost told him he thought it could be bought for less, and Tekotte asked him to see defendant and ascertain if he would take $110 per acre. Shortly thereafter, in fact in the afternoon of that day, Tekotte went to Frost's home to see if the latter had seen defendant which the latter had not done as he had not had time to do so. It was there-

upon agreed between them that as soon as Tekotte knew he could sell his farm, both would go to see defendant. Frost, on the first interview with Tekotte, had told him that he was to be paid a commission by defendant if he sold the farm. Tekotte immediately arranged to sell his farm to a purchaser he thereafter found, and, on Wednesday or Thursday of the same week, went to see defendant without going by for the above-mentioned plaintiff or telling him of it. They, Tekotte and defendant. finally agreed to a purchase and sale of the farm at $14,050, or a fraction over $111 per acre; and, by agreement, a deed was made direct from Evans to Tekotte instead of from Evans to Duncan, from Duncan to defendant, and then from defendant to Tekotte.

Plaintiff waited a reasonable length of time, partly on account of the prevalence of the "flu," and then spoke to defendant about their commission. There is evidence that on Sunday, January 25, the day before plaintiff Frost saw Tekotte and endeavored to get him to buy the farm, Tekotte, in talking with one, Elmer Gibbs, another farmer, about a trade between themselves, learned that, from what Gibbs had heard, defendant had bought or "was about to trade for" the Hamilton place, and Gibbs suggested to Tekotte that he sell his place to him, Gibbs, and buy the Hamilton place. No trade was ever consumated between them, however. Gibbs had no authority from defendant to sell the farm nor was he making any effort to do so, but merely informed him of what he had heard rumored and made the suggestion above stated.

When plaintiffs saw defendant in reference to their commission, they asked him if he thought they had "done him any good" toward selling his place and defendant said yes, he thought they had. Defendant, however, said that Gibbs was claiming a commission, and that while he was willing to pay one commission, he was not willing to pay two; that he would pay plaintiffs a commission if he did not have to pay Gibbs. Defendant, when asked if he had told Gibbs to sell it for him, said

he had not. Plaintiffs knew nothing of Giggs' connection with the matter, having never heard of it before, and told defendant they did not see how he would have to pay Gibbs a commission if no authority had been given him. Defendant, however, told them they would have to see Gibbs, and they told defendant they would see him, to which defendant replied "all right." They went to see Gibbs, but he disclaimed any right to a commission, and testified at the trial that he had never claimed any, nor that he ever attempted to sell the farm. But, notwithstanding Gibbs was not claiming any commission, defendant thereafter refused to pay plaintiffs.

We think that, under all the evidence, and the inferences which a jury could rightfully draw therefrom, there was sufficient evidence to go to the jury on the question of whether plaintiffs' efforts were the procuring and inducing cause of the sale. Plaintiffs disclosed to defendant a man who would buy and then called on that man and informed him they were endeavoring to sell the farm and would get a commission and sought to interest him in buying the same. Although Tekotte had learned of the rumor that defendant had obtained the farm and would sell it, yet plaintiff's information was not mere rumor but was positive and stirred Tekotte into immediate and decisive action. He bought the farm within a week and afterward the defendant admitted the plaintiffs "had done him good" and he was willing to pay them a commission if he did not have to pay Gibbs, but did not want to pay two commissions. Taking all of the evidence into consideration, we are unable to say the jury had no substantial basis for their verdict. [Weisels-Gerhart Real Estate Co. v. Epstein, 157 Mo. App. 101, 106; Lane v. Cunningham, 171 Mo. App. 17, 21; Schwabe v. Estes, 218 S. W. 908, 909.

As to the contention that plaintiffs were disloyal to their principal, in disclosing that he would take less than $120 per acre and that their efforts hindered rather than helped the sale, no theory of that kind was ad-

vanced at the trial, nor was such point raised in any manner unless it can be said to be included in the general demurrer to the evidence based on the claim that plaintiffs' efforts were not shown to be the procuring cause.

If, however, plaintiffs' efforts otherwise were the procuring cause, we do not see how this disclosure under the circumstances could be said to conclusively defeat their cause of action. The jury could well find from the evidence that such disclosure was not made until after Tekotte, who knew the farm and its condition, had positively stated he would not give $120 per acre, and that the disclosure that it perhaps could be had for less was made in order to keep Tekotte interested and from regarding the possibility of a purchase as being hopeless.

Plaintiffs' instruction on the issue of the procuring cause of the sale was erroneous. It told the jury that it was not necessary to plaintiffs' recovery that their efforts constituted the sale contributing cause of the purchase but that if they disclosed the name of Tekotte to defendant, and later, they or either of them, interested Tekotte in the property and directed his attention to defendant, and if through such efforts negotiations were begun which resulted in the sale this was sufficient on the issue as to who procured said sale and whether plaintiffs were the procuring and inducing cause thereof, and that by "procuring and inducing cause" is meant that cause originating a series of events which in natural sequence results in the accomplishment of the sale. It will be observed that the instruction does not tell the jury it was not necessary to plaintiffs' recovery that their efforts constituted the sole contributing cause of the purchase, *provided they found the plaintiffs' efforts were the procuring cause of the sale,* but that if they found certain things then *this was sufficient* on the issue as to to who procured it, and then went on to define the meaning of the phrase "procuring and inducing cause." If the instruction had done this it would perhaps have been not inconsistent with defendant's instruction which

told the jury that it was not sufficient that the act of plaintiffs was one of a chain of causes bringing about the sale, but their act or acts must have been the inducing or procuring cause, and the burden was on them to show not only that they opened negotiations but that the sale was actually affected through their means and not by the intervention of other parties prior thereto. But to tell the jury plaintiffs' acts did not have to be the sole contributing cause but that if *through their efforts* the sale resulted, then this was *sufficient* on the issue of procuring cause, is misleading and is liable to be misunderstood by laymen, who might think that the sale was "through their *effects*" as one of a chain of causes and yet was sufficient under the instruction.

For this error the judgment is reversed and the cause remanded for a new trial. All concur.